

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/30/2013

IN RE: §
R&K FABRICATING, INC. § CASE NO: 10-33878
and §
RICARDO GONZALEZ §
　　　Debtor(s) §
 §
 § CHAPTER 11

## MEMORANDUM OPINION

### Background

R&K Fabricating, Inc. filed a voluntary Chapter 11 petition on May 5, 2010. ECF No. 1. Ricardo Gonzalez was the principal and 100 percent shareholder of R&K on the Petition Date. ECF No. 345 at 2. Mr. Gonzalez filed an individual Chapter 11 petition on the same date. ECF No. 345 at 2. Mr. Gonzalez's individual case was subsequently converted to one under Chapter 7. ECF No. 345 at 2. Mr. Gonzalez received his discharge on March 5, 2013. ECF No. 345 at 2.

Michael Durrschmidt was appointed the Chapter 11 Trustee in R&K's case on March 31, 2011. ECF No. 106. R&K's chapter 11 plan was confirmed on July 12, 2012. ECF No. 302. The Final Fee Applications for Mr. Durrschmidt and his counsel were approved on December 12, 2102. ECF Nos. 331 & 332. An adversary proceeding concerning Tokio Marine & Nichido Fire Insurance Co, Ltd.'s Proof of Claim, Case No. 12-03177 (the "Tokio Litigation"), remains pending.[1] On March 5, 2013, Adversary No. 12-03223 was closed, leaving only the Tokio Litigation to be adjudicated in this case.

For seven of the nine quarters in which R&K operated pre-confirmation, disbursements averaged over $2,000,000.00 per quarter, resulting in a UST fee of $9,750.00 per quarter. ECF

---

[1] Case No. 13-03035 was consolidated into case No. 12-03177.

No. 345 at 3. Since Mr. Durrschmidt returned control of R&K to Mr. Gonzalez, the Post-Confirmation Reports do not reflect disbursements from R&K's business operations. ECF No. 345 at 2. Disbursements for R&K for the third and fourth quarters of 2012 dropped to ten percent of their pre-confirmation levels, reducing the UST quarterly fee to $1,950.00. ECF No. 345 at 2-3. As of the filing of the present Motion, R&K had not filed any Post-Confirmation Reports.

On March 11, 2013, Nancy Holley, counsel for the UST, emailed Mr. Durrschmidt informing him that R&K had outstanding quarterly fees of $3,910.04. ECF No. 355-1 at 2. The email informed Mr. Durrschmidt that if R&K did not pay the fees by April 1, 2013, the UST would file a motion to show cause with the Court. ECF No. 355-1 at 2. On March 28, 2013, Mr. Durrschmidt issued two checks to the UST, in the amount of $1,950.00 each, in satisfaction of the outstanding quarterly fees. ECF No. 355-1 at 3-4.

On April 9, 2013, the UST filed its Motion for Order to Show Cause. ECF No. 345. The UST's Motion requested the following: (1) that the Court enter an order to show cause why the Reorganized Debtor should not be ordered to provide an accounting and affidavit regarding all disbursements from business operations since the effective date of its plan; (2) order R&K to pay all delinquent and outstanding UST fees based on such account; (3) order the case closed so that no further delinquencies accrue; and (4) order R&K to file outstanding affidavits of disbursement and pay all outstanding fees through the first quarter of 2013, at least ten days prior to the show cause hearing set for May 20, 2013. ECF No. 345 at 3. On April 30, 2013, Mr. Durrschmidt filed his Response. ECF No. 346.

A hearing was held on May 30, 2013. Ms. Holley argued that based on the plain language of the Plan, administrative claims of the UST should be paid from the ongoing business

operations of R&K and the Reorganized R&K. Ms. Holley indicated that R&K's account with the UST had a credit balance of $1,300.00, but because the UST had not yet received Post-Confirmation Reports from the Reorganized R&K, the UST could not determine what was owed in quarterly fees.

Mr. Durrschmidt argued that the Estate's assets were sold to the Reorganized R&K under the Plan. He asserted that the transfer to R&K was no different than a sale to a third party, and as such, the UST fees should not be calculated based on R&K's post-confirmation disbursements, but only from disbursements under the Plan. Mr. Durrschmidt also indicated that he was not opposed to having the post-confirmation UST fees paid out of the potential judgment in Adversary No. 12-03177 since this case remained open, not because of R&K, but because of the unresolved Tokio Litigation. One of Mr. Durrschmidt's damage models in the Tokio Litigation accounts for the fact that this case remained open unnecessarily as a result of the defendants' alleged fraud.

The Court ordered that the Reorganized R&K file its Post-Confirmation Reports under protest in the event that the Reorganized R&K's disbursements would be the metric used for determining the UST's post-confirmation quarterly fees. The Reorganized R&K submitted all of these reports by September 27, 2013.

The relevant sections of the Plan are excerpted as follows:

### XII. Efforts to Sell of R&K

> "During the pendency of the bankruptcy case, the Trustee explored the possibility of selling R&K as a method to pay creditors. Discussions progressed with two potential suitors; however, it was apparent that the Plan presently being proposed by the Debtor and Trustee is likely to return a far greater return to creditors."

ECF No. 302-2 at 11.

## XVII. Means for Implementation of Plan Consummation

"On the Consummation Date, all of the Personal Property held by the Estate shall vest in the Reorganized R&K, free and clear of all Claims and interests, but subject to the obligations and security interests as set forth in the Plan, the Confirmation Order and the Security Agreement to be executed in conjunction with Confirmation. To secure the performance of the Reorganized Debtor, all Personal Property shall be subject to a security interest in favor of the Disbursing Agent for the benefit of Class 19 and 20 Claimants. Immediately prior to the Effective Date, the Trustee will execute, on behalf of the Estate a security agreement granting to the Disbursing Agent a lien in and to all of the Personal Property of the Estate."

"A Disbursing Agent shall be appointed pursuant to the Confirmation Order… the Disbursing Agent shall, among other things, (a) act in the stead of and as the nominee of the holders of Class 19 and 20 Claims; (b) receive payments from the Debtor; (c) review and if necessary challenge Claims filed by Creditors; and (d) make all payments and distributions contemplated by the Plan."

"The rights and powers of the Disbursing Agent will include:

i)   Performing the Disbursing Agent's obligations under the Plan;

ii)  Managing and investing the Plan Funds;

iii) Effectuating all distributions under the Plan to Classes 19 and 20;

iv)  Prosecuting, compromising or otherwise resolving all Claim objections;

v)   Closing the Case; and

vi)  Taking all other action necessary to assist in implementing the Plan."

ECF No. 302-3 at 9-10.

**XVIII. Means of Execution**

> "The Administrative Claims of the UST will be paid as they come due from the ongoing business operations of R&K and the Reorganized R&K."

ECF No. 302-3 at 12.

On June 6, 2013, Mr. Durrschmidt filed his Application for Entry of Final Decree. ECF No. 353. The UST filed her Objection to the Application for Entry of Final Decree on June 13, 2013. On June 17, 2013, Mr. Durrschmidt filed his Reply to the UST's Objection. ECF No. 355. On September 9, 2013, the Court entered an Order closing the case. ECF No. 384. The Court retained jurisdiction to determine the amount of fees payable under 28 U.S.C. § 1930, and ordered that no collection activity of any disputed fees be commenced pending determination by the Court. ECF No. 384.

## Analysis

28 U.S.C. § 1930(a)(6) provides that a quarterly fee must be paid to the United States trustee in every chapter 11 case until the case is converted or dismissed, whichever occurs first. The quarterly fee is based upon the debtor's total disbursements for a given quarter. *U.S. Trustee v. Pettibone Corp, et. al. (In re Pettibone Corp., et. al.)*, 251 B.R. 335, 340 (N.D. Ill. 2000). The term "disbursements" is not defined in the Bankruptcy Code. In the absence of a statutory definition, the term "disbursement" should be construed according to its ordinary meaning. *Id*. at 340. Disbursement is defined as "funds paid out." Webster's Ninth New Collegiate Dictionary 361 (1990). A majority of courts that have considered how to define "disbursements" have determined that "disbursements" means all of a reorganized debtors disbursements, and not only those made under a plan of reorganization. *See, e.g. In re Pettibone Corp.*, 251 B.R. at 339 (UST fees should be calculated based on all payments made by reorganized debtor); *see also Tighe v.*

*Celebrity Home Entm't., Inc. (In re Celebrity Home Entm't.)*, 210 F.3d 995, 998 (9th Cir. 2000) (if disbursements were limited to payments by an estate, amendment would have minimal impact). The Court agrees, and holds that "disbursements" means both those made under a plan of reorganization and all other amounts paid out by a reorganized debtor.

The Court rejects the argument that vesting the Estate's assets in the Reorganized R&K was the equivalent of a sale to a third party. The Plan indicates that a far greater return will result from vesting the assets in the Reorganized R&K than from selling them to a third party. The Plan provides that the Personal Property held by the Estate will vest in the Reorganized R&K upon consummation of the Plan. There is no indication that the Estate received independent consideration for vesting the Property in the Reorganized R&K. It is apparent from the plain language of the Plan that the Estate's assets were not sold to the Reorganized R&K, but merely re-vested in the original debtor upon consummation of the Plan. Under the statute, R&K is liable for payment of the quarterly fees. Additionally, R&K sought to reorganize its debts. In order to reorganize, it is fair for R&K to be liable for the costs of the reorganization, which include the payment of quarterly UST fees. Accordingly, primary responsibility for the payment of the quarterly fees rests on R&K.

Because the vesting in the Reorganized R&K will not be treated as a sale to a third party, disbursements of the Reorganized R&K will be used to determine the UST's quarterly fees. Both disbursements made under the plan, and disbursements from the Reorganized R&K's business operations will be used to determine the UST's fees. Based on the Post-Confirmation Reports submitted by the Reorganized R&K, the quarterly UST fees are as follows:

| Quarter | Disbursements | UST Fee |
|---|---|---|
| 07/12/2012 - 09/30/2012 | $861,908.00 | $4,875.00 |

| | | |
|---|---:|---:|
| 10/01/2012 - 12/31/2012 | $937,712.00 | $4,875.00 |
| 01/01/2013 – 03/31/2013 | $768,647.00 | $4,875.00 |
| 04/01/2013 – 06/30/2013 | $1,310,470.00 | $6,500.00 |
| 07/01/2013 – 09/05/2013 | $754,498.00 | $4,875.00 |
| | | **Total: $26,000.00** |

On March 28, 2013, Mr. Durrschmidt paid $3,910.04 to the UST for quarterly fees. Ms. Holley also indicated at the May 30 hearing that R&K's account had a credit of $1,300.00. Amounts paid to the UST post-confirmation, must be credited against the $26,000.00 owed.

The Court has not located any authority discussing whether the Disbursing Agent or some other party might be responsible for paying the post-confirmation UST fees under § 1930(a)(6). Mr. Durrschmidt has indicated that he is not opposed to paying the post-confirmation UST fees out of the funds that would otherwise be paid to creditors if he prevails in the Tokio Litigation. In fact, Mr. Durrschmidt indicated that one of his damage models in the Tokio Litigation contemplates damages for the fact that this case remained open for a protracted period of time due to the alleged fraud for which he is suing.

Under the facts of this case, the prosecution of the Tokio Litigation is integral to the total returns being paid to creditors. If administrative issues related to the Tokio Litigation have caused an increase in the quarterly fees that must be paid, that is merely a cost of the reorganization process that should rightly be borne by R&K. However, the Court agrees that allowed quarterly fees are a legitimate charge against the distribution that creditors would receive from a potential judgment. If the Tokio Litigation is successful, then a portion of the quarterly fees will be reimbursed ahead of distributions to R&K's creditors.

This case would have necessarily remained open regardless of the Tokio Litigation until at least March 5, 2013—the date on which all other matters in the case were finally resolved. R&K's creditors should not be required to compensate R&K for post-confirmation UST fees that would have accrued despite the Tokio Litigation. If Mr. Durrschmidt prevails in the Tokio Litigation, the funds under his control will reimburse R&K for the post-confirmation UST fees that accrued from April 1, 2013 through the closing of the case.[2]

### Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **September 30, 2013.**

                                                Marvin Isgur
                            UNITED STATES BANKRUPTCY JUDGE

---

[2] Assuming that a motion to close was filed on March 5, 2013, a hearing on the motion would not normally be held until the last week of March, 2013. As such, the Court will require reimbursement to R&K for fees beginning April 1, 2013.